

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

KTF:ADR/BW
F. # 2022R00152

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 28, 2022

<u>By Hand and ECF</u>

The Honorable Roanne L. Mann
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Jamel Clarke et al.
               <u>Docket No. 22-MJ-679</u>

Dear Judge Mann:

        The government respectfully submits this letter in support of its application for the entry of a permanent order of detention for defendants Jamel Clarke ("Clarke"), Dwayne Harris ("Harris"), Pheod Khan ("Khan"), Rayon Lovett ("Lovett") and Owen Welch ("O. Welch") (the "defendants").  As described below and in the criminal complaint charging them, the defendants have been involved in a months-long firearms and narcotics trafficking conspiracy, during which time they have sold more than 25 lethal firearms and hundreds of grams of crack cocaine throughout residential neighborhoods in Brooklyn and Queens.

        For the reasons set forth below, the government submits that the defendants are both a danger and a flight risk and that no combination of conditions can reasonably secure their appearance at trial or the safety of the community.  Accordingly, they should be detained.

I.    <u>Background</u>

        Since September 2021 and through the present, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the New York City Police Department ("NYPD") have been investigating the unlawful trafficking of firearms by defendants Harris, Clarke, Lovett, O. Welch and O. Welch's brother Ronald Welch ("R. Welch"), and the unlawful trafficking of narcotics by defendants Harris, Lovett, Clarke, Khan and a co-conspirator who remains at large. During this period, an undercover NYPD officer (the "UC") has purchased approximately 28 firearms from Harris, Lovett, Clarke, O. Welch and R. Welch and over 1,500 grams of crack cocaine from Harris, Lovett, Clarke, Khan and the co-conspirator.  The UC was introduced to the defendants by D. Harris, who served as a middleman brokering deals for guns and drugs from

different suppliers.  The defendants are not licensed importers, manufacturers or dealers of firearms.

The defendants Harris, Lovett, Clarke and O. Welch have been arrested and charged with engaging in an unlawful firearms trafficking conspiracy, in violation of Title 18, United States Code, Section 371 and Title 18, United States Code, Sections 922(a)(1)(A) and 924(A)(1)(D).  The defendants Harris, Lovett, Clarke and Khan were arrested and charged with possession with intent to distribute narcotics, in violation of Title 21, United States Code, Section 841 and conspiracy to distribute narcotics, in violation of Title 21, United States Code, Section 846.

Because defendants Harris, O. Welch and Clarke were convicted felons at the time of the conduct at issue, there is also probable cause that they violated Title 18, United States Code, Section 922(g)(1) (being a felon in possession of a firearm).

During the gun and drug trafficking conspiracy, the defendants Harris, Clarke, Lovett and O. Welch delt guns and ammunition on residential Brooklyn streets, including selling the UC approximately 28 firearms over several transactions.  The defendants Lovett and Clarke also sold the UC over 500 grams of crack cocaine over several transactions.  The gun and drug trafficking defendants conducted drug and gun deals in vehicles outside homes in the Prospect Park South neighborhood of Brooklyn, including in locations near Prospect Park and one location across from a church.  The deals often occurred in the middle of the afternoon and in broad daylight, with the dealers sometimes brazenly walking down public streets carrying bags of dangerous firearms past residents.  As described further below, many of the guns were high-powered shotguns and rifles.  Some of the guns had defaced serial numbers so that they would be untraceable by law enforcement.  At least two of the guns had been previously used in four separate shootings in Brooklyn.

During the related drug trafficking conspiracy, the defendants Harris, Kahn and a co-conspirator delt drugs in local neighborhoods, including selling the UC over 950 grams of crack cocaine over several transactions.  Harris, Khan and their co-conspirator conducted drug deals in vehicles outside homes in the East New York residential neighborhood of Brooklyn and the South Ozone Park residential neighborhood of Queens, often in the middle of the afternoon and in broad daylight.

Most recently, on June 15, 2022, at approximately 7:25 p.m., Lovett and O. Welch sold the UC a KelTec KS7 shotgun and an American Tactical AR-15-style rifle that the defendant had obtained shortly beforehand.  The buy occurred on Nostrand Avenue and Church Avenue, just below Prospect Park and around the corner from P.S. 181, a kindergarten through eighth grade public school.

From September 2021 to the present, the defendant and his co-conspirators sold the UC 21 handguns of varying calibers (most semi-automatic), one Wilson Combat AR-15-style rifle, one SWD M11/9 semi-automatic pistol, one S.C. Nova AK-47-style rifle, one American Tactical AK-47-style rifle, one Marlin .22 caliber rifle, one KelTec KS7 shotgun, and one American Tactical AR-15-style rifle.  A selection of these is below:

2









4





II.	Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

A rebuttable presumption of dangerousness and risk of flight arises when a defendant is charged with a drug offense under 21 U.S.C. § 801 et seq. for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3)(A). The presumption means that the Court must initially assume there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id. The defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even if the defendant were to meet his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on

proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also Mercedes, 254 F.3d at 437 ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

III. Argument

The defendants Harris, Lovett, Clarke and Khan are subject to a presumption of dangerousness and risk of flight because there is probable cause that they committed a narcotics offense under 21 U.S.C. § 841 that carries a maximum term of imprisonment exceeding ten years. See 18 U.S.C. § 3142(e)(3)(A). Regardless, every Section 3142(g) factor counsels significantly in favor of all of the defendants' detention here. The government more than meets its burden of showing by clear and convincing evidence that the defendants pose a danger to the community based on their involvement in the trafficking of dangerous heavy-duty firearms and drugs in residential neighborhoods. Moreover, the overwhelming evidence gathered during months of controlled buys by the UC, coupled with the high penalties the defendants face, give them a strong incentive to flee and to obstruct justice. Accordingly, the government can likewise show by a preponderance of the evidence that the defendants pose a flight risk.

  A. Nature of the Crimes Charged

The crimes charged in this case are extremely serious, as they involve the trafficking of narcotics and deadly weapons and ammunition in residential neighborhoods near parks, churches and schools, in broad daylight, including by convicted felons. See 18 U.S.C. § 3142(g). See United States v. Dillard, 214 F.3d 88, 94 (2d Cir. 2000) ("The risk of violent use posed by a convicted felon's possession of firearms is significant."); United States v. Watkins, 940 F.3d 152, 163 (2d Cir. 2019) ("It has long been the law of our Circuit that possession of a firearm is unequivocally a crime of violence for purposes of § 3142(f)(1)(A).").

  B. The Weight of the Evidence

The evidence of the defendants' involvement in the alleged conduct is overwhelming. The UC conducted controlled buys of guns and drugs from the defendants that were heavily documented, photographed and sometimes video recorded. The evidence also includes telephone records showing communications among the co-conspirators around the times of the buys, GPS data showing the defendants' whereabouts at particular times, in-person surveillance, and physical evidence including firearms, ammunition and narcotics. Where, as here, the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835

F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

    C.    The Defendants' History and Characteristics

Pheod Khan sold over 700 grams of crack cocaine during the conspiracy. He is known by law enforcement to be incredibly dangerous, having committed a murder following an altercation with a friend. Khan was charged with the murder in Kings County and ultimately pled guilty in January 2010 to a lesser offense, criminal possession of a weapon in the second degree, in violation of N.Y.P.L. § 265.03. Khan was sentenced to 15 years' imprisonment and five years' post-release supervision. Crucially, he was still on New York state parole at the time of the conduct charged here.

Owen Welch sold ten firearms during the conspiracy. Among other offenses, in October 2008, O. Welch was convicted of attempted criminal possession of a weapon in the second degree in violation of N.Y.P.L. § 265.03, a felony for which he was sentenced to two years' imprisonment and two years' post-release supervision. Moreover, O. Welch's brother Ronald Welch played a pivotal role in the criminal scheme, raising questions as to whether O. Welch's family members can provide appropriate guidance and moral suasion.

Rayon Lovett sold 17 firearms, the most of any defendant, and over fifteen grams of crack cocaine. Lovett played a crucial role in the firearms and narcotics trafficking conspiracy as he connected the UC with Chester, O. Welch and R. Welch. Lovett boasted to the UC that he supplies all of Brooklyn with guns. Among the firearms Lovett sold were handguns with defaced serial numbers to avoid tracing by law enforcement.

Jamel Clarke sold five firearms and over 500 grams of crack cocaine. Chester has been convicted of four prior felony offenses, including attempted assault in the second degree (N.Y.P.L. § 120.05), criminal possession of narcotics in the fourth degree (N.Y.P.L. § 220.09), attempted assault in the third degree (N.Y.P.L. § 120.00) and burglary in the third degree (N.Y.P.L. § 140.20).

Each of Harris, Lovett, Chester, and Khan face a statutory mandatory minimum sentence of five years and maximum of 40 years if they are convicted of a conspiracy to distribute 500 grams or more of a substance containing cocaine under 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(ii).

Additionally, Harris, Lovett, Chester and O. Welch face up to five years for each of their firearms sales under 18 U.S.C. §§ 371, 922(a)(1)(A) and 924(A)(1)(D). The criminal histories of some of the defendants could lead to significant guidelines ranges. Moreover, the defendants will receive significant guidelines enhancements because the offenses involved: (1) firearms trafficking; (2) more than 25 firearms; (3) semiautomatic firearms capable of accepting large capacity magazines; and (4) firearms with altered or obliterated serial numbers.

Courts in this Circuit have held that the prospect of a daunting sentence and, in particular, a mandatory minimum sentence, increases the risk of flight. See, e.g., United States v. English, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant faced a presumption against release, and a mandatory minimum prison term of 20

years that incentivized fleeing); United States v. Henderson, 57 F. App'x 470, 471 (2d Cir. 2003) (citing 18 U.S.C. § 3142(a) and holding that, "[i]n this case, the presumption regarding flight risk has changed because [the defendant] now faces a 10-year mandatory minimum sentence"); Dodge, 846 F. Supp. at 184-85 (possibility of a "severe sentence" heightens the risk of flight).

        D.      The Defendants Pose a Danger and a Risk of Flight

As discussed above, the conduct in this case involves trafficking in narcotics and high-powered, deadly firearms near homes and schools, which is aggravated by the defendants' extensive and violent criminal histories. The defendants have shown a propensity for physical harm and a disregard for the criminal justice system. Defendant Khan, who is on New York state probation, has shown that court-imposed conditions of release have no meaning to him and that, if given the opportunity, he will continue to engage in the same criminal conduct again. The defendants pose a clear danger to the community, as well as to witnesses (including the UC) if released.

The defendants also face overwhelming evidence of their involvement and harsh penalties prescribed by law, giving them substantial incentive to flee.

For all of these reasons, the drug defendants cannot successfully rebut the presumption of dangerousness and flight risk that applies here, and none of the defendants can overcome the clear and convincing evidence that they are a danger to the community and the preponderance of evidence that they are a flight risk.

IV.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court issue a permanent order of detention against Harris, Clarke, Lovett, O. Welch and Khan.

                                              Respectfully submitted,

                                              BREON PEACE
                                              Acting United States Attorney

                         By:     /s/
                                              Andrew Reich
                                              Benjamin Weintraub
                                              Assistant U.S. Attorneys
                                              (718) 254-7000

cc:      Defense Counsel (by email)